UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Bellboy Corporation, a Minnesota corporation, d/b/a American Food Services International,

Plaintiff,

v.

Ohanneson Worldwide, a California corporation,

Defendant.

Civ. File No. 01-1177 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Defendant's Motion to Dismiss for lack of personal jurisdiction and improper venue or in the alternative to transfer venue. For the reasons that follow, the Court grants the Motion.

**BACKGROUND**

Plaintiff Bellboy Corporation ("Bellboy") is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. Bellboy exports frozen meats and fish as well as restaurant supplies to the Middle East. In February 1996, Bellboy started a company called American Food Services International ("AFSI") in Aberdeen, Maryland, to operate the export business.

Defendant Ohanneson Worldwide ("Ohanneson") is a California corporation with its principal place of business in San Francisco, California. Ohanneson operated a freight

FILED OCT 18 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD OCT 18 2001
DEPUTY CLERK

forwarding business but is now going out of business and winding up its affairs. After being solicited by AFSI, Ohanneson provided freight forwarding services to AFSI from 1996 through 2000.

This case arises from one of Bellboy's shipments to Aqaba, Jordan, in late March 2000. According to Bellboy, Ohanneson had been responsible for arranging marine and rejection insurance on all of Bellboy's shipments. In April 2000, Bellboy informed Ohanneson that it would no longer use Ohanneson to arrange its insurance but would use a Minnesota insurance agent, Terry Hendrickson of the Hendrickson Insurance Agency, instead. Although Ohanneson apparently worked with Hendrickson to arrange insurance coverage dates during the transition period, Bellboy alleges that Ohanneson wrongfully cancelled insurance coverage on the shipment to Aqaba.

This shipment was rejected in Jordan and returned to Bellboy in the United States. The goods were damaged, deteriorated, and pilfered. Bellboy's insurance claim was rejected because the insurance coverage had been cancelled. Accordingly, Bellboy is claiming that Ohanneson breached a contract between the parties, was negligent, and breached a fiduciary duty that Ohanneson owed to Bellboy.

Bellboy argues that it mitigated its losses by selling the remaining rejected goods and stopping payment on monies owed by it to Ohanneson. Ohanneson has filed a counter-claim in California for these monies, but it argues that it had to wait to file this claim until after a statutory 30-day period. Ohanneson has now filed this Motion seeking to dismiss Bellboy's

claims for lack of personal jurisdiction and improper venue or in the alternative to transfer venue of this case to California.

Bellboy notes, for the purposes of this Motion, that over 600 or 700 checks, representing in excess of $300,000, were sent to Ohanneson, in payment of Ohanneson's invoices for services and insurance premiums, from Bellboy's Minneapolis office. All of these checks bore a Minneapolis, Minnesota address. Bellboy also alleges that Elizabeth Ohanneson, a part owner of Ohanneson Worldwide, or other members of Ohanneson's staff spoke with Bellboy's Minneapolis office on a number of occasions to inquire when a particular payment would be made. Eventually, Ohanneson sent a number of invoices to the Minneapolis office. In June 2000, Ms. Ohanneson visited Bellboy's Minneapolis office to discuss the cancellation of insurance on the Aqaba shipment and the monies owed by Bellboy to Ohanneson.

Bellboy also alleges that Ms. Ohanneson solicited business in Minnesota. In 1999, she apparently called an executive of Bellboy on behalf of a company called Ohanneson Farm Products Company, inquiring if Bellboy was interested in purchasing a shipment of food products originating in Minnesota. Finally, Ohanneson admits that it did business with another client in Minnesota, although it claims that it did not solicit this client and has never traveled to Minnesota to deal with this client.

Ohanneson argues that prior to June 2000, all of the transactions between Ohanneson and Bellboy were conducted via telephone and facsimile, and that the majority of these

transactions were between AFSI in Maryland and Ohanneson. Ohanneson also alleges that AFSI initially solicited Ohanneson for its services. According to Ohanneson, it does not and did not maintain a presence in Minnesota. Ohanneson claims that it has not marketed or distributed any of Bellboy's goods in Minnesota, is not qualified to do business in Minnesota, has never had any employees, officers or directors domiciled in Minnesota, and has never directed any advertising towards Minnesota. Finally, Ohanneson claims that Ms. Ohanneson's visit to Minnesota, while in transit to North Dakota, was a one-time occurrence.

**DISCUSSION**

Once a defendant challenges a federal court's in personam jurisdiction, the plaintiff has the burden of presenting a prima facie case that such jurisdiction exists. Burlington Indus., Inc. v. Maples Indus., Inc. 97 F.3d 1100, 1102 (8th Cir. 1996); Aero Sys. Eng'g, Inc. v. Opron, Inc., 21 F. Supp. 2d 990, 995 (D. Minn. 1998); Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996). In determining whether plaintiff has made a prima facie showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and all factual disputes must be resolved in the plaintiff's favor. Digi-Tel, 89 F.3d at 522; Aero Sys., 21 F.Supp. 2d at 995. Doubts as to whether a court has personal jurisdiction over a defendant should be resolved in favor of retaining jurisdiction. Hunter-Keith, Inc. v. Gen. Elec. Credit Corp., Civ. No. 4-84-804, 1987 WL 8592, at * 4 (D. Minn. 1987).

A court must test the reach of its personal jurisdiction by determining first if the

requirements of the forum state's long arm statute are met and then by determining if the requirements of federal due process are met. Where the relevant state long-arm statute extends as far as due process allows, as does Minnesota's, the two inquiries are codeterminate. See Minn. Stat. § 543.19; Dotmar, Inc. v. Niagra Fire Ins. Co., 533 N.W.2d 25, 29 (Minn. 1995) (describing the reach of Minnesota's long-arm statute); Wessels, Arnold & Handerson v. National Med. Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). As the Supreme Court has noted, there are no "talismanic" formulas to personal jurisdiction. See Burger King Corp. v. Rudzewicz, 471 U.S. at 462, 485 (1985). Nevertheless, it is clear that the defendant's "contacts" with the forum state must not arise due to mere fortuity, but must arise because of the defendant's "purposeful availment" of the privilege of conducting activities in the state. See Id. at 475; Hanson v. Denkla, 357 U.S. 235, 253 (1958); Digi-Tel Holdings, Inc. v. ProTeq Telecomm., Ltd., 89 F.3d 519, 522 (8th Cir. 1996). In other words, the defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

### A. General Jurisdiction

General personal jurisdiction is present whenever a defendant's contacts with the forum state are so "continuous and systematic" that it may be sued in the forum over any controversy, whether or not the cause of action has any relationship to the defendant's activities within the State. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). This standard is met for citizens of the forum state; for others, the standard is exacting and difficult to meet. See Nichols v. G. D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993) (noting that general jurisdiction is falling into growing disfavor as the doctrine of specific jurisdiction broadens). Singular or isolated activities in a state are not sufficient for general jurisdiction, nor does continuous activity of some sort necessarily satisfy the requirement. Id. at 1199; see Int'l Shoe, 326 U.S. at 317-18. The contacts must be substantial. See Nichols, 991 F.2d at 1999 (quoting Int'l Shoe, 326 U.S. at 318)).

Considering the facts presented in the light most favorable to Bellboy, Ohanneson does not have contacts which amount to "continuous and systematic" activity such that Ohanneson could reasonably anticipate being haled into a Minnesota court over any controversy. In this case there are no systematic contacts other than the payments made by Bellboy to Ohanneson from Minnesota. These unilateral payments, however, are not sufficient to confer general jurisdiction. See Hanson, 357 U.S. at 253 (stating that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State").

In reaching this conclusion, it is important to note that AFSI originally solicited Ohanneson's services. "A defendant's contacts with Minnesota are insufficient to warrant jurisdiction when the plaintiff has initiated the business contacts and the defendant did not purposefully avail itself of Minnesota law." Walker Mgmt., Inc. v. FHC Enter., Inc., 446 N.W.2d 913, 915 (Minn. Ct. App. 1989). This is true even where there is a continuing relationship obligating the defendant to make payments to or receive payments from a forum state company. See, e.g., Growth Leasing, LTD. v. Satellite Medium Corp., 397 N.W.2d 343, 345 (Minn. App. Ct. 1986).

The jurisdictional calculus in this case is not altered by Bellboy's allegation that Ms. Ohanneson solicited Bellboy's business. Bellboy admits that Ms. Ohanneson was calling Bellboy on behalf of a corporation which is not part of the present litigation. Accordingly, this alleged contact is irrelevant for the purposes of this case. Additionally, Ohanneson's telephone calls and facsimiles to Bellboy even when aggregated with Ms. Ohanneson's one-time visit to Minnesota are insufficient to constitute "continuous and systematic" activity. Accordingly, this Court does not have general jurisdiction over Ohanneson.

**B. Specific Jurisdiction**

The exercise of personal jurisdiction, however, may be appropriate even in the absence of general jurisdiction if the Court has specific jurisdiction over Ohanneson. If Ohanneson has purposely directed activities at residents of the forum and the litigation results from "alleged injuries that 'arise out of or relate to' those activities," a finding of

specific jurisdiction is appropriate. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985) (citing Helicopteros, 466 U.S. at 414).

Bellboy essentially argues that specific personal jurisdiction is appropriate in this case pursuant to the so-called "effects test" first annunciated by the Supreme Court in Calder v. Jones, 465 U.S. 783 (1984). In Calder, the Court concluded that a California court could assert personal jurisdiction over the nonresident defendants despite the defendants' lack of contacts with California because the defendants' intentional actions were aimed at the forum state, the defendants knew that their actions would have a potentially devastating impact on the plaintiff, and the defendants knew that the brunt of the injury would be suffered in California. Id. at 789-90. In essence, then, personal jurisdiction over non-resident defendant is appropriate when the defendant's "acts 'are performed for the very purpose of having their consequences felt in the forum state.'" Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1391 (8th Cir. 1991) (quoting Brainerd v. Governors of Univ. of Alberta, 873 F.2d 1257, 1260 (9th Cir. 1989)). Here, without any analysis, Bellboy concludes that Ohanneson's actions were expressly aimed at Minnesota and the brunt of the injury has been felt in Minnesota.

Such a cursory application of the Calder test, however, is unpersuasive in this case. Here, Bellboy has not provided any evidence, inferential or direct, to suggest that Ohanneson intentionally sought to cause Bellboy harm. Indeed, Bellboy has not even alleged such intentional harm in its Complaint. As the Eighth Circuit stated, constraining the breadth of

its holding in Dakota Indus., Calder simply "requires the consideration of additional factors when an intentional tort is alleged." Dakota Indus., 946 F.2d at 1391. In the absence of such an allegation, the Court is unwilling to base a finding of personal jurisdiction over Ohanneson on Calder.

### C. Jurisdictional Discovery

Bellboy argues that it should be allowed jurisdictional discovery to determine the nature of Ohanneson's business with its other Minnesota client. The decision to grant jurisdictional discovery is within the sound discretion of the District Court. See Tuttle v. Lorillard Tobacco Co., 118 F. Supp. 2d 954, 959 (D. Minn. 2000) (citing Arch v. The American Tobacco Co., 984 F. Supp. 830, 841 (E.D. Pa. 1997)). In this case, jurisdictional discovery relating to the nature of Ohanneson's business with its one other Minnesota client could only be relevant to the question of whether this Court can exercise general personal jurisdiction over Ohanneson. Given the paucity of Ohanneson's contacts with Minnesota, however, even if these alleged additional contacts exist, they are not sufficient to provide a basis for this Court to exercise general personal jurisdiction over Ohanneson. Accordingly, Bellboy's request is denied.

Because the Court does not have personal jurisdiction over Ohanneson, Ohanneson's Motion to Dismiss for lack of personal jurisdiction must be granted. It is therefore unnecessary for this Court to consider the parties' arguments regarding venue in this case.

**CONCLUSION**

Based on all the files, record, and proceedings herein, the Court finds that it lacks personal jurisdiction over Ohanneson.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or in the Alternative to Transfer Venue is **GRANTED**; and
2. Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 18, 2001

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.